## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## COVINGTON

Eastern District of Kentucky
FILED

NOV 1 8 2025

AT COVINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

**CRIMINAL ACTION NO.**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

**V.**                        **PLEA AGREEMENT**

**NATALIE FEHSE**                                              **DEFENDANT**

\*  \*  \*  \*  \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to the sole count of the Information, charging a violation of 42 U.S.C. § 6928(d)(2)(A), illegal storage of hazardous waste.

2. The essential elements of 42 U.S.C. § 6928(d)(2)(A) are:

   (a) Defendant knowingly stored a waste material;

   (b) The waste material was a listed or identified hazardous waste;

   (c) The storage was done without a permit; and

   (d) The defendant knew that the material had the potential to be harmful to others or the environment.

3. As to the sole count of the Information, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

   a. Defendant was the General Manager of Company A's facility which was engaged in the business of producing parts for use in the manufacturing of

1

town

automobiles located at 107 Industrial Road, Williamson, Kentucky. As part of the production processes at Company A, it applied coatings and adhesives to metal automobile parts and generated hazardous wastes through the production processes, including spent solvents listed under the Resource Conservation and Recovery Act (RCRA) hazardous waste codes F003 and F005, among others.

b. Kentucky Department of Environmental Protection, Division of Solid Waste (KDEP-DOW) conducted an inspection of Company A's facility on June 27, 2024, During the 2024 inspection of the Company A facility, KDEP found semi-trailers, shipping containers, and an abandoned warehouse that contained in total two hundred and forty-nine (249) 55-gallon drums of waste



and approximately twenty-seven (27) cubic yards of waste stored in cardboard, wooden crates, and yellow totes containing substantial quantities

of hazardous wastes, including spent solvent hazardous wastes of hazardous waste codes F003, F005, and D001.





c.  FEHSE told inspectors that Company A had been struggling since the Covid pandemic to properly dispose of its hazardous waste. FEHSE said Company

3

A was shut down for a period during Covid, and when Company A reopened, the company was only able to hire eight (8) employees. FEHSE told inspectors that Company A had orders backing up that they could not fulfill, and the company began being fined by customers for not delivering orders on time. FEHSE stated Company A could not afford to dispose of hazardous waste. FEHSE further told inspectors that Company A could only afford to dispose of the hazardous waste that was currently being generated. Company A had manifests for four hazardous waste shipments from the facility since a prior September 2023 inspection. The manifests indicated that Company A had shipped one load of liquid waste with a waste code of D007 for chromium, and three loads of liquid flammable waste identified as MEK with waste codes F003, F005, D035, and D001. FEHSE admitted to KDEP inspectors that Company A began storing hazardous waste that Company A could not afford to properly dispose of after the plant shutdown during Covid in 2020. Some of the hazardous waste discovered during the inspection had been accumulating on site since the summer of 2020. FEHSE told inspectors that Company A could not afford to properly dispose of the hazardous waste discovered in the shipping containers, tractor trailers, and the abandoned warehouse building, that was located by KDEP inspectors on June 27, 2024.

d. Federal agents executed a federal search warrant at Company A on or about November 5, 2024.  Pursuant to the search warrant, Company A business records and waste samples were seized. The seized records and waste

4

samples confirmed that Company A and FEHSE were storing hazardous wastes, including hazardous wastes with hazardous waste codes F003 and F005, without a RCRA hazardous waste storage permit.

4. The statutory punishment for the offense is imprisonment for not more than 5 years, a fine of not more than $250,000.00 or twice the gross gain or twice the gross loss, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of sentencing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court:

(a) The United States Sentencing Guidelines (U.S.S.G.) manual in effect at the time of sentencing will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the information in Paragraph 3 and provided in discovery.

(c) Pursuant to U.S.S.G. § 2Q1.2, the base offense level is 8.

(d) Pursuant to U.S.S.G. § 2Q1.2(b)(4), increase the offense level by 4 levels for failure to have a permit.

(e) Pursuant to U.S.S.G. § 3B1.1(c), if the Defendant was a manager or supervisor in any criminal activity, the offense level will be increased by 2. The Defendant reserves the right to contest this enhancement.

(f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(g) There is no restitution or victims in this case.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8. The Defendant waives the right to appeal the guilty plea, conviction, and sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The United States will recommend releasing the Defendant on conditions for future court appearances if the Defendant does not violate the terms of the order setting conditions of release.

10. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

11. The Defendant recognizes that pleading guilty may have consequences with respect to her immigration status because she is not a citizen of the United States. Under federal law, a broad range of crimes, which may include the offense that the Defendant is pleading guilty to, are removable offenses. Removal and other immigration consequences

6

are the subject of a separate proceeding, however, and the Defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. The Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant

is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act,

28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

14. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

15. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

16. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

PAUL C. MCCAFFREY
ACTING UNITED STATES ATTORNEY

Date:  11/18/25        By:  _____
                            Emily K. Greenfield
                            Assistant United States Attorney

ADAM R. F. GUSTAFSON
ACTING ASSISTANT ATTORNEY
GENERAL
U.S. DEPARTMENT OF JUSTICE
ENVIRONMENT AND NATURAL
RESOURCES DIVISION

By:  _____

Matthew T. Morris
Senior Trial Attorney
Environmental Crimes Section

Date:  _10-27-2025_    _____

Natalie Febse
Defendant

Date:  _10/31/2025_    _____

Timothy Belevetz
Attorney for Defendant

10